# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0452** (Berkeley County CC-02-2018-F-288)

**Wilson H.,**
**Defendant Below, Petitioner**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Wilson H., by counsel Matthew T. Yanni, appeals the Circuit Court of Berkeley County's January 18, 2019, order denying his motion for new trial and the sentencing order entered by the circuit court following his convictions for sexual abuse in the first degree; sexual abuse by a parent, guardian, custodian, or person in a position of trust; and intimidation of a State witness.[1] Respondent the State of West Virginia, by counsel Mary Beth Niday, filed a response.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The Morgan County Sheriff contacted the West Virginia State Police regarding a complaint of child sexual abuse made by Marian J., the grandmother of the victim, M.O.[2] Cpl. J.D. See of the State Police met with Marian and then M.O. at the Safe Haven Child Advocacy Center in Morgan County. M.O. initially disclosed an instance when she and her mother, Bobbi, were in petitioner's camper when Bobbi left for an errand. M.O. reported that after her mother left the camper, petitioner, while intoxicated, touched the child's vagina through her clothing and "moved his hand a little bit." On June 9, 2017, Cpl. See attempted to contact petitioner and Bobbi without success. After Cpl. See met with M.O. a second time, an arrest warrant was issued for petitioner, and he was arrested on July 28, 2017. Thereafter, M.O. disclosed to Cpl. See that petitioner also put his "dick" on her mouth area, and a superseding indictment was returned.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d. 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] The alleged conduct occurred shortly after M.O. turned thirteen years old.

1

On August 3, 2018, Lyndsey Hash, the victim advocate for the Berkeley County Prosecuting Attorney's Office, met with M.O. and the prosecutor. At the end of that meeting, Ms. Hash reportedly noticed M.O. was no longer making eye contact with her and was fidgeting as she slid a handwritten note across the table to them. It read

> I hate [petitioner] because I don't like when I always have to be in early and be grounded all the time when I'm late or when I'm in trouble and I hate reading for an hour and studying all the time and when mom don't spend time with me all the time. I hate the rules and he stole my mom from my dad and me that's why I lied to get rid of him.

However, M.O. told Ms. Hash that she had to write the note and wanted them to read it after she left. Ms. Hash escorted M.O. into the hallway to meet her mother where she overhead Bobbi ask M.O. what she had told them. After Ms. Hash told the prosecutor what occurred in the hallway, recordings of petitioner's jail phone calls were obtained from the Eastern Regional Jail; the recordings revealed two calls between petitioner and Bobbi during which petitioner directed her to ensure that M.O. wrote reasons why she hated him. In a subsequent call, petitioner asked Bobbi if the note had been written, and Bobbi read the note to petitioner. Cpl. See then obtained warrants for petitioner and Bobbi for witness intimidation. Bobbi pled guilty as a co-defendant to witness intimidation. As part of her plea agreement, she was placed on one year of probation and agreed to testify truthfully at petitioner's trial.

Petitioner was tried before a jury in April of 2019. He objected to the admission of Bobbi's guilty plea based upon relevance and prejudice, but the circuit court overruled those objections, finding that the probative value of such evidence outweighed any prejudicial effect, and allowed the admission of the same. However, during the trial, Bobbi denied having intimidated M.O. into writing the letter, explaining that M.O. wrote the letter of her own accord. The circuit court declared Bobbi a hostile witness. She then denied having a jail phone conversation with petitioner despite the State playing the recording that explicitly referenced M.O.

Ashley, Bobbi's twenty-year-old daughter, testified that she and Bobbi were both petitioner's girlfriends.[3] Ashley testified that her consensual relationship with petitioner began around August of 2017, when Ashley was nineteen. According to Ashley, she began having sex with petitioner at Bobbi's request because Bobbi wanted to have another child but was unable to do so due to brain cancer. Ashley gave birth to her child with petitioner in May of 2018. At the time of the trial, Ashley was no longer in contact with petitioner but was raising her biological son.

Petitioner moved for a judgment of acquittal on all charges and requested that one count of attempted sexual assault in the second degree be dismissed due to double jeopardy, but the circuit court denied that motion. Despite petitioner's having been advised of his right to remain silent, petitioner elected to testify during the trial. He admitted being in a relationship with Bobbi and Ashley but denied being in a relationship with M.O. Petitioner testified that during the relevant time period, two other people were living in his camper. He also denied that M.O. ever stayed in

---

[3]As discussed more fully below, the circuit court instructed the jury on the limited purpose of Ashley's testimony before she took the stand.

the trailer alone with him. Petitioner told the jury that he had cameras in his trailer that Bobbi monitored, and informed the jury that Bobbi would have "flipped out" if she saw any activity like M.O. described. He claimed that he gave the video footage to his prior attorney but that it had been lost. At the conclusion of the trial, the jury convicted petitioner of two counts of sexual abuse in the first degree; two counts of sexual abuse by a parent, guardian, or person in a position of trust; and one count of intimidation of a State witness. However, it acquitted him of attempted sexual assault in the second degree.

On May 8, 2019, the circuit court entered both a sentencing order and order denying petitioner's motion for a new trial. In the order denying the motion for a new trial, the circuit court found that the Rule 404(b) evidence was properly admitted subject to the limiting instruction. The court also found that the admission of Bobbi's guilty plea to witness intimidation was not used by the State to imply petitioner's guilt. Instead, the guilty plea was admitted as impeachment evidence because the witness testified that she never intimidated a witness. In its sentencing order, the circuit court sentenced petitioner to the following: (a) time served for witness intimidation; (b) one to five years of incarceration for one count of sexual abuse in the first degree; (c) ten to twenty years of incarceration for one count of sexual abuse by a parent, custodian, or person in a position of trust; (d) one to five years of incarceration for sexual abuse in the first degree; and (e) ten to twenty years of incarceration for a second count of sexual abuse by a parent, guardian, custodian, or person in a position of trust, said sentences to run consecutively with one another for an aggregate sentence of twenty-two to fifty years of incarceration. Petitioner was also required to register as a sexual offender for life and register with the child abuse and neglect registry for ten years. Upon his release from incarceration, petitioner was ordered to serve thirty-five years of supervised release. Petitioner appeals from those orders.

On appeal, petitioner sets forth a single assignment of error. However, that assignment encompasses three distinct issues, and we will address the three areas separately. At the outset, he asserts that the circuit court erred by admitting evidence of Bobbi's guilty plea to a charge of witness intimidation because the plea was used to show that petitioner was also guilty. Petitioner asserts that, at trial, part of Bobbi's direct examination by the State addressed whether she was charged with a crime for her actions in this case, which prompted petitioner to object. He argued that any criminal conviction Bobbi received was not relevant to his prosecution and that the admission of any such evidence was more prejudicial than probative as to petitioner's guilt. The State responded that Bobbi is "a co-defendant on the witness intimidation charge" and the circuit court overruled the objections.

In support of his argument, petitioner sets forth large portions of *State v. Caudill*, 170 W. Va. 74, 289 S.E.2d 748 (1982), which provides, in relevant part:

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

Syl. Pt. 3, *id.* Petitioner argues that the State was impeaching its own witness with the admission of the guilty plea but that the impeachment "was of such duration that it prompted [petitioner's] objection, which the circuit court overruled and declared Bobbi a hostile witness." He correctly asserts that it was clear he was not physically present with M.O. when she was writing the letter and his only communication was with Bobbi. Thus, petitioner contends that the only relevance of Bobbi's plea agreement was to show petitioner's guilt by association.

Subsequent to *Caudill*, we held as follows:

4. During the direct examination of a co-defendant, a prosecutor may elicit testimony regarding the co-defendant's plea agreement, and may actually introduce the plea agreement into evidence for purposes which include, but are not necessarily limited to: (1) allowing the jury to accurately assess the credibility of the witness; (2) eliminating any concern by the jury that the government has selectively prosecuted the defendant; and (3) explaining how the witness has first-hand knowledge of the events about which he/she is testifying.

5. A trial judge considering whether, or the extent to which, a plea agreement may be used by the prosecution must endeavor to protect the defendant from impermissible uses of the plea agreement, such as using the plea agreement: (1) as evidence of a defendant's guilt, (2) to bolster the testimony of a co-defendant, or (3) to directly or indirectly vouch for the veracity of a co-defendant who has pleaded guilty and then testified against the defendant. To carry out this duty, the trial judge must study the plea agreement with care and redact all prejudicial and irrelevant provisions.

Syl. Pts. 4 and 5, *State v. Swims*, 212 W.Va. 263, 569 S.E.2d 784 (2002). Further, we have held that "[a] trial court's decision to admit the plea agreement of a co-defendant is an evidentiary ruling which is reviewed for abuse of discretion." Syl. Pt. 6, *id.*

In this case, the State admitted evidence of the accomplice's guilty plea to provide the jury with information concerning events surrounding the crime, her involvement in the crime, and petitioner's participation in the crime. Thus, evidence of Bobbi's guilty plea was not used solely to show petitioner's guilt by association. The circuit court overruled petitioner's objection and found that the probative value of Bobbi's testimony outweighed any prejudicial effect and allowed the evidence to be admitted. Then, despite the State admitting Bobbi's plea agreement into evidence, she denied intimidating M.O. or any other witness. She also denied having M.O. write a letter recanting her previous statements and testified that M.O. wrote the letter before asking Bobbi to give it to the attorney. In light of that testimony, it is clear that the evidence was intended to provide the jury with information surrounding the witness intimidation, Bobbi's involvement in the crime, and petitioner's participation in the crime as evidenced by the jail phone calls with Bobbi. Thus, we find that the circuit court did not abuse its discretion in allowing testimony regarding Bobbi's plea agreement.

Next, petitioner argues that the circuit court was required to sua sponte provide a jury instruction that Bobbi's guilty plea could not be considered "as proving the guilt of the defendant[]

and may only be considered for proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility." Syl., in part, *State v. Flack*, 232 W. Va. 708, 753 S.E.2d 761 (2013). Petitioner argues that *Flack* makes it clear that the failure to object to the admission of an accomplice's plea of guilty to the same crime charged against the defendant can waive the limiting jury instruction if one is not required; therefore, he concludes that the court was not required to sua sponte give a limiting jury instruction in that circumstance. However, "the question remains if the court [was] required to *sua sponte* give a limiting jury instruction when the defendant objects to the admission of the accomplice's guilty plea, as was the case here." (Emphasis in original.)

> "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

Syl. Pt. 5, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019). In *Flack*, this Court specifically included the language "upon the motion of the defendant" in order for the circuit court to be obligated to give the instruction petitioner now contends should have been given. However, petitioner does not deny the fact that he failed to request such instruction. The only cases petitioner cites in support of his argument are *Flack* and *Caudill*, and neither case requires the provision of such instruction when it was not requested. Therefore, we find that the circuit court did not err in failing to sua sponte offer the instruction petitioner belatedly requests.

Finally, petitioner asserts that the circuit court erred by allowing Ashley to testify regarding the sexual relationship she had with petitioner when that relationship began approximately eight months after the alleged sexual abuse of M.O. The State first gave notice of its intent to introduce 404(b) evidence of the sexual relationship with M.O.'s sister, Ashley, in its notice filed prior to trial. Following the receipt of the notice, petitioner requested a *McGinnis* hearing, during which Ashley testified that she and petitioner had a son together that was born on May 13, 2018.[4] She testified that she and Bobbi were both girlfriends of petitioner but that Ashley's sexual relationship with petitioner did not begin until after Ashley was nineteen years of age.

> In addressing the circuit court, the State told the circuit court that its position
>
> is that his sexual relationship with [Ashley] does show, and the statements that he made to her you just heard testimony about, about being interested in having sexual relations with [M.O.], go to, yes, a plan and common scheme that he's dating [Bobbi] and he's slept with her oldest daughter and now he is – he might try to sleep with her younger daughter. . . . I think that another bit of evidence we heard today is that [petitioner] would sexually pursue Ashley, especially when he was intoxicated. And I know that of course the [c]ourt is not privy to this, but part of the State's allegation is that in the case at hand, the actual criminal case is that intoxication played a part of that as well.

In response, petitioner argued that the 404(b) notice did not address the intoxication issue.

---

[4] *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

Thereafter, the State filed a memorandum in support of 404(b) evidence and an amended notice of intent to introduce 404(b) evidence. In addressing the testimony from the *McGinnis* hearing, the State argued that "[t]hose pieces of information fit in under 404(b), specifically going to not just what I originally put the common scheme or plan for the defendant to have sexual relations with [Bobbi's] daughters, but specifically the lustful disposition towards the victim. . . ." The State overruled petitioner's objection to that testimony.

Prior to Ashley's testimony, the circuit court gave a limiting instruction to the jury that provides, in relevant part:

> The testimony [you are about to hear] involves other acts of the defendant. This evidence is not to be considered b[y] you as establishing guilt for the offenses for which the defendant is currently being tried. . . . [T]his evidence may only be received by you the jury to show one, a common scheme or plan of the defendant to have sex with Bobb[i's] daughters. Two, the defendant's sexual behaviors while drinking and when Bobbi . . . would leave the premises, and, three, the defendant's lustful disposition toward [M.O.] . . .

Petitioner argues that the State failed to establish evidence of a common plan or scheme by him to have sex with Bobbi's daughters. Further, he asserts that M.O. claims that petitioner touched her vagina over her clothes and touched her face with his penis while Ashley claimed that the two engaged in sexual intercourse. Therefore, he argues that there was no common plan or scheme established by Ashley's testimony. Additionally, petitioner contends that an alleged statement made to an adult regarding his desire to engage M.O. in sexual activities after she turned eighteen does not show lustful disposition in that the statement was not made in the presence of M.O. and was premised upon M.O. being of legal age to consent.

"'Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.' Syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995)." Syl. Pt. 5, in part, *Lacy v. CSX Transp. Inc.*, 205 W. Va. 630, 520 S.E.2d 418 (1999). Rule 404(b) of the West Virginia Rules of Evidence prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Syllabus point 2 of *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990), provides, in part, that

> [c]ollateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.

In this case, the evidence introduced under Rule 404(b) was presented to establish that petitioner had a lustful disposition toward the victim. The trial court complied with the requirements of *McGinnis* and preliminarily found that the State's 404(b) evidence would be admitted upon a proper foundation. During the trial, the circuit court found that the sexual encounters between Ashley and petitioner and M.O. and petitioner were reasonably close in time to the incident giving

rise to the indictment and admitted Ashley's testimony. Ashley's trial testimony revealed that petitioner sometimes had sex with her when he was intoxicated and that he had a lustful disposition toward M.O.

The circuit court considered the statements and the parties' arguments in a hearing prior to trial and determined that the statements constituted res gestae evidence. The circuit court also gave a limiting instruction at the time the statements were introduced to the jury. Based upon the record before this Court, we find that the circuit court did not abuse its discretion in permitting the State's introduction of Ashley's statements in order to establish petitioner's lustful disposition toward M.O. and to establish his common plan or scheme. For these reasons, we affirm the circuit court's January 18, 2019, order denying his motion for new trial and the sentencing order entered by the circuit court following his convictions for sexual abuse in the first degree; sexual abuse by a parent, guardian, custodian, or person in a position of trust; and intimidation of a State witness.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison


**NOT PARTICIPATING:**

Justice Margaret L. Workman

7